Smith, P. J.
Action to recover for services rendered by tbe plaintiffs, Daniel F. Cridler and Milton J. Baker, and their assignor, John. K. McKinnon, as physicians and surgeons, in and about the surgical and medical treatment of Charles Pryor, a lad, a nephew of the defendant. The lad was run over by cars upon a railroad track, crushing both legs above the ankle, and the plaintiffs amputated them below the'knee. Both the lad's parents were living, but his mother had obtained a divorce from her husband; and they were living separately, in the village of Hornellsville. The lad lived with his mother, who was a sister of the defendant. At the time of the injury the lad and his mother were visiting at the house of her mother, Mrs. Colegrove, at Ackport, a few miles from Hornellsville, and there the services of the plaintiffs were rendered.
The plaintiffs relied upon an oral promise of the defendant to pay them for their services, alleged to have been made on the second day after the injury happened, and the day before the amputation was performed, in a conversation that occurred between the three physicians and the defendant in a bedroom off of the dining-room in Mrs. Colegrove’s house, at which no other person was present. The defendant denied making the alleged promise.
In speaking of this conflict of testimony, the judge charged the jury, in substance, that affirmative evidence is entitled to greater weight than negative testimony, for the reason that one swearing affirmatively and positively to a fact is guilty of perjury if the fact did not occur, whereas one who swears negatively is only subject (to quote from the charge,) “to the common infirmity of humanity when we say, in trying to reconcile testimony, that he has forgotten it.”
This part of the charge was excepted to. In order to determine whether the charge was erroneous, it will be necessary to look with some particularity at the testimony of the defendant. He testified that there were two bedrooms in the house, one off off the parlor, the other off of the dining-room or kitchen. He first testified to a conversation in the kitchen or dining-room bedroom on Tuesday, at which Drs. Cridler and McKinnon, the defendant and Mrs. Pryor were present. Dr. Baker was not present, he not having arrived at that time. In the conversation then had, as the defendant detailed it, there was nothing said about paying the physicians. The witness also testified that after Dr. Baker came, he and Dr. Cridler, and, as the witness thought, Dr. McKinnon, with the witness and Mr. Pitts, an uncle of Mrs. Pryor, went into the parlor bedroom, and discussed the boy’s condition and what had better be done; that Dr. Cridler asked witness what he thought, and witness replied that if the boy was his he would have his leg amputated; that during the interview, Pitts asked whether the boy’s father took *234 any responsibility in the matter, and witness said that they need not hesitate on account of the boy’s father, that witness would stand between him and them, all harm or all damages. “I think,” said the witness, “ that is all I can remember.” The witness further testified, “ I did not in that room say to either of the doctors or any of them ‘ go' on and do what you can for him and I will pay for it.’ ” . . “ After the interview in the parlor bedroom where we four were, there was no time when the three doctors and myself went into the kitchen bedroom. I never was in the kitchen bedroom when Dr. Baker was present. The time when we were in the kitchen bedroom was before Dr. Baker arrived, and then Dr. Cridler was in the bedroom most of the time, Mary, (Mrs. Pryor), was there and Dr. McKinnon stood in the door part of the time. I wasn’t in the parlor bedroom having any conversation, only, as I have stated, when Mr. Pitts and Dr. Cridler and Dr. Baker were present; never was there but that once. There was no time when the three doctors and I were in that bedroom with the door shut, and when I said ‘go on and do the best you can for the boy and I will see you paid, or I will pay you for it,’ nor in any bedroom. I never spoke ‘ pay,’ never used the word. The word to ‘ pay ’ was never spoken of by them either.” .' . . “Up to the time that amputation took place, I did not use the word ‘ pay’ to them or they to me.”
It will be observed that the testimony of the defendant is not merely negative ; it details the conversations; and it positively denies that certain words imputed to Mm by the plaintiffs’ witnesses, and the only words constituting a promise, were uttered by him. He does not deny according to his best recollection; he does not rest upon a mere want of memory, but he gives his version of the interviews and conversations positively, and as positively the making of the promise testified to by the plaintiffs’ witnesses. If his version is untrue, it would seem to be as difficult to relieve Mm from the imputation of perjury, as it would be for the plaintiffs to escape the like imputations, if their statement is untrue. Had he testified merely that he did not recollect saying what the plaintiffs testified to, or had his testimony been such as to justify the inference that he was testifying to a lack of recollection and notlfing more, the case would have been different. But in view of the positive and affirmative character of his testimony, we think the' charge excepted to was erroneous and may have prejudiced the defendant.
There are some other exceptions, but. as the questions raised by them may be eliminated from the case, upon another trial, it is unnecessary to consider them. For the reason above stated, the judgment and order should, be reversed and a new trial granted, costs to abide event.
Bakkee, Haight and Bradley, JJ., concur.
So ordered.